IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE GOODYEAR TIRE & RUBBER CO., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:08-cv-01118 (DDD) |
| | ) |
| v. | ) |
| | ) |
| BAYER AG., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR LR 37.1 MOTION TO COMPEL PRODUCTION OF
<u>THE GOODYEAR-SHELL SETTLEMENT AGREEMENT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ii

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  ARGUMENT ....................................................................................................................... 3

    A.   The Goodyear-Shell Settlement Agreement, In Its Entirety, Is Relevant
        And Discoverable ...................................................................................................... 4

    B.   The Goodyear-Shell Settlement Is Not Privileged From Discovery ..................... 7

    C.   The Protective Order Can Protect Any Remaining Concerns Of
        Confidentiality .......................................................................................................... 9

III. CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Cooper Indus.*,
   No. 03-476-JBC, 2007 WL 805459 (E.D. Ky. 2007) .................................................................9

*Bank of Brussels Lambert v. Chase Manhattan Bank*,
   No. 93 Civ. 5298, 1996 WL 71507 (S.D.N.Y. 1996) .................................................................8

*Bennett v. La Pere*,
   112 F.R.D. 136 (D.R.I. 1986) (Selya, J.) ..........................................................................4, 5, 8

*Brown Badgett, Inc. v. Jennings*,
   842 F.2d 899 (6th Cir. 1988) .....................................................................................................4

*Burlington Indus. v. Milliken & Co.*,
   690 F.2d 380 (4th Cir. 1982) .....................................................................................................6

*Cleveland Constr. Inc. v. Whitehouse Hotel Ltd. P'ship*,
   No. Civ. A. 01-2666, 2004 WL 385052 (E.D. La. 2004) ......................................................5, 9

*DIRECTV, Inc. v. Puccinelli*,
   224 F.R.D. 677 (D. Kan. 2004)..................................................................................................9

*Goodyear Tire & Rubber Co. v. Chiles Power Supply*,
   332 F.3d 976 (6th Cir. 2003) .................................................................................................8, 9

*Griffin v. Mashariki*,
   No. 96-Civ-6400, 1997 WL 756914 (S.D.N.Y. 1997) .....................................................5, 7, 8

*Grupo Condumex, S.A. de C.V. v. SPX Corp.*,
   331 F. Supp. 2d 623 (N.D. Ohio 2004)......................................................................................9

*In re CFS-Related Secs. Fraud Litig.*,
   99-CV-825, 2003 WL 24136089 (N.D. Okla. 2003)..............................................................4, 8

*LaForest v. Honeywell Int'l*,
   No. 03-cv-6248, 2004 WL 1498916 (W.D.N.Y. 2004)..............................................................7

*Meharg v. I-Flow Corp.*,
   No. 1:08-cv-0184, 2009 WL 3032327 (S.D. Ind. 2009).......................................................5, 8

*QSI Fostoria, D.C. LLC v. BACM 2001-1*,
   No. 3:02-CV-07466, 2006 WL 2010791 (N.D. Ohio 2006) (Carr, J.) ........................... passim

*Santrayll v. Burrell*,
    No. 91 Civ. 3166, 1998 WL 24375 (S.D.N.Y. 1998) ............................................................. 7

*Thomas & Marker Constr. Co. v. Wal-Mart Stores, Inc.*,
    No. 3:06-cv-406, 2008 WL 3200642 (S.D. Ohio 2008) ........................................................ 4

*Tribune Co. v. Purcigliotti*,
    No. 93 Civ. 7222, 1996 WL 337277 (S.D.N.Y. 1996) ............................................... 3, 5, 6, 8

*White v. Kenneth Warren & Son, Ltd.*,
    203 F.R.D. 364 (N.D. Ill. 2001) ......................................................................................... 6, 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ............................................................................................................... 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ..................................................................................................... 3, 4, 5, 7

Fed. R. Evid. 408 ................................................................................................... passim

I.     **PRELIMINARY STATEMENT**

Goodyear, the plaintiff, has alleged a conspiracy to fix prices among four groups of companies – the Bayer, Dow and Eni companies, which are the defendants in this case – and Shell, initially named as a defendant, but no longer a party because it settled with Goodyear. Defendants now seek production of the Goodyear-Shell settlement agreement, which is responsive to defendants' Document Request No. 43. Goodyear has objected to producing the settlement agreement on grounds of relevance, FRE 408 and confidentiality. Goodyear's objections are groundless.

*First*, the settlement agreement is relevant and defendants' need for it is urgent especially in light of what happened today. Goodyear alleges that a conspiracy occurred at various trade association meetings attended by various Bayer, Dow, Polimeri Europa,[1] and Shell employees in Europe between 1995 and 2002. Next week, as the Court knows, the parties will be deposing Martijn Vogelzang, a former Shell employee and likely the only Shell-related witness in this case, who attended a number of the alleged cartel meetings. Mr. Vogelzang is appearing "voluntarily" for a deposition in the Netherlands at Goodyear's request. He is doing so because the Goodyear-Shell settlement agreement – undisclosed to defendants, but described generally by Goodyear – contains a cooperation clause. That alone demonstrates defendants' need for the settlement agreement for purposes of establishing bias of the witness and reliability of the witness's testimony.

Stunningly, defendants learned this morning how deep the cooperation goes and, therefore, how great their need for the Goodyear-Shell settlement agreement is. Last Thursday, as the Court recalls, the parties spoke to the Court about the scheduling and timing of Mr.

---

[1] Polimeri Europa S.p.A, and its predecessor, EniChem (now known as Syndial S.p.A) are the Eni subsidiaries that manufacture, market and sell the products relevant to this case.

Vogelzang's deposition. During that call, the Court asked specifically whether Mr. Vogelzang had provided any statement to the parties. As far as defendants' counsel knew, the answer was no because no such statement had been produced in discovery. Goodyear's counsel remained silent in response to the Court's direct question, and continued to remain silent during a subsequent conference call with defense counsel and the Court's law clerk about scheduling a status conference. This morning, four days later, Goodyear's counsel disclosed for the first time the existence of a five-page, single-spaced statement that had been signed by Mr. Vogelzang over a month ago. This morning Goodyear also belatedly turned over more than 800 pages of documents (some in foreign languages) that Shell had previously provided to Goodyear pursuant to the Goodyear-Shell settlement agreement. Goodyear had not previously disclosed these documents to defendants even though the documents should have been produced long ago. The obvious cooperation between Goodyear and Shell underscores the need for the entirety of the Shell settlement agreement for bias alone.

Defendants' need for the settlement agreement goes beyond simply the need to show bias and reliability, however. For example, the agreement is relevant to defendants' evaluation of the extent and nature of any remaining claim for damages, especially because the amount of the Shell settlement will offset Goodyear's remaining damages claim. The agreement is also relevant to issues relating to the merits of the claims in this case (including, but not limited to, the significant and ongoing issue of the legitimacy of Goodyear's pursuit of its *foreign* claims in a United States lawsuit). Goodyear may argue that it has offered to produce the cooperation clause, but defendants are entitled to know not just the terms of the cooperation clause, but also how that clause relates to the rest of the agreement.

*Second*, FRE 408 has no application here. FRE 408 is not a discovery rule. Rather, FRE 408 limits the *admissibility* of certain statements used in settlement negotiations. It therefore does not apply to the discovery of a settlement agreement, such as the Goodyear-Shell agreement, as courts in the Northern District of Ohio and elsewhere have consistently held.

*Third*, Goodyear asserts a desire to preserve the confidentiality of the settlement agreement, but there is a protective order in this case that is more than sufficient to protect any claimed confidentiality.

The Goodyear-Shell settlement agreement should be produced immediately, especially so that defendants can prepare for the upcoming deposition of Mr. Vogelzang.

## II. ARGUMENT

Courts routinely allow discovery of settlement agreements and the Court should order production of the Goodyear-Shell settlement agreement here because: (1) the entire agreement is relevant and therefore discoverable under Rule 26, (2) the agreement is not subject to any valid claim of privilege; and (3) any issues of confidentiality can be addressed through a protective order such as the one in this case. *See, e.g.*, *QSI Fostoria, D.C. LLC v. BACM 2001-1*, No. 3:02-CV-07466, 2006 WL 2010791 (N.D. Ohio 2006) (Carr, J.) (permitting production of a settlement agreement between the plaintiff and a third party); *Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222, 1996 WL 337277 (S.D.N.Y. 1996) (permitting discovery of settlement agreement between plaintiffs and one defendant, finding it relevant to the bias of the settling defendant, who would potentially be an important fact witness at trial).[2] We address each issue below.

---

[2] Defendants have supplied these cases to Goodyear, and presume they will respond to them in their brief.

### A. The Goodyear-Shell Settlement Agreement, In Its Entirety, Is Relevant And Discoverable.

Rule 26's liberal discovery standard allows defendants to discover any non-privileged, relevant information that is admissible or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). In ordering the production of a settlement agreement, Chief Judge Carr recently explained that the Federal Rules seek to provide opportunities for discovery that allow parties – like defendants here – to evaluate their claims, defenses and case strategy, including any prospects for settlement, efficiently as a means to streamline litigation and to spare the Court's time and resources. *QSI Fostoria*, 1996 WL 2010791, at *2 (citing *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988)); *see also Bennett v. La Pere*, 112 F.R.D. 136, 140-41 (D.R.I. 1986) (Selya, J.) (non-settling defendant's "ability realistically to evaluate the plaintiffs' case against it depends upon an awareness of the terms and conditions of the [plaintiffs'] settlement with codefendants").

The Goodyear-Shell settlement agreement is discoverable here for at least three reasons:

*First*, and of most immediate importance, the settlement agreement will allow defendants to explore and evaluate the bias or prejudice of witnesses like Mr. Vogelzang who may be appearing only because Shell is required to cooperate with Goodyear. The settlement agreement is relevant in that respect for impeachment purposes and indeed may even be admissible at trial. *See In re CFS-Related Secs. Fraud Litig.*, 99-CV-825, 2003 WL 24136089, at *3 (N.D. Okla. 2003) ("The clear majority of the cases relied upon by the parties hold that settlement agreements are discoverable with regard to the issues of witness bias and credibility.") (citing cases); *see also Thomas & Marker Constr. Co. v. Wal-Mart Stores, Inc.*, No. 3:06-cv-406, 2008 WL 3200642, at *3 (S.D. Ohio 2008) (settlement agreement between plaintiff and settling defendant discoverable where relevant to the non-settling defendant's "claims and defenses," and

also "to the credibility of witnesses who may be called at trial [and] to any damages that may ultimately be awarded"); *Cleveland Constr. Inc. v. Whitehouse Hotel Ltd. P'ship*, No. Civ. A. 01-2666, 2004 WL 385052 (E.D. La. 2004) (settlement agreement between party and non-party discoverable because it was relevant to the credibility of the defendant's claims and its witnesses); *Griffin v. Mashariki*, No. 96-Civ-6400, 1997 WL 756914, at *2 (S.D.N.Y. 1997) (allowing discovery of settlement for possible use to impeach witnesses).[3]

The relevance of the Goodyear-Shell settlement agreement to showing the bias or prejudice of witnesses is confirmed by the court's decision in *Tribune*. There, the owners and publishers of a newspaper sued hundreds of employees and former employees on charges stemming from allegedly fraudulent hearing loss claims filed with the state workers compensation board. The defendants sought to compel production of a settlement agreement between plaintiffs and one of the defendant-employees. The court held that the remaining defendants had satisfied the discoverability requirements of Rule 26(b)(1), finding that the settling defendant was "a direct participant in the events that g[a]ve rise to plaintiffs' claims against all of the remaining defendants in [the] case," and that because the "plaintiff may have agreed to dismiss [him] from the case in exchange for his testimony about certain matters in dispute," the "settlement agreement [was] . . . relevant to his motivation for testifying." *Tribune*, 1996 WL 337277, at *2. The same reason applies here, especially given the close and ongoing relationship between Goodyear and Shell. *See Meharg v. I-Flow Corp.*, No. 1:08-cv-0184, 2009 WL 3032327, at *6 (S.D. Ind. 2009) (ordering production of settlement because it could provide

---

[3] In allowing for the admission "at trial of settlement-related documents for the purpose of proving the bias or prejudice of a witness," *Tribune Co.*, 1996 WL 337277, at *3, FRE 408 presumes such materials are discoverable and will be available for use to the extent permitted by the rule. *See Bennett*, 112 F.R.D. at 139 ("There is, of course, no satisfactory way for the [defendant] to determine whether it can slip within the integument of the Rule 408 exception unless it gains discovery access to the settlement documents."). Here, though, the issue is not admissibility but discoverability, and that standard is easily met.

"[e]xternal evidence of a change in circumstances that shows a motive to shade or alter testimony" and thereby "provide a powerful boost to the impeachment").

Goodyear has offered to produce only the cooperation clause and only if defendants forever give up their right to the rest of the agreement. That offer falls well short of being sufficient. Defendants are entitled to know not just the terms of the cooperation clause, but how that clause relates to the rest of the agreement; how the agreement as a whole may bear on the bias or prejudice of Mr. Vogelzang; and what Shell may have said (or not said) about any claimed liability. In particular, defendants are entitled to know the amount of any payments made by Shell to Goodyear, because such information bears directly on the value that Goodyear and Shell attached to Shell's cooperation and the benefits it would provide Goodyear and, thus, the nature and extent of the bias. *Tribune*, 1996 WL 337377, at *3 ("The amount of money that plaintiffs have agreed to accept from [the settling defendant] in exchange for dismissing the case against him, as well as other terms of the settlement, may bear on the issue of his bias and prejudice.").

*Second*, as the Court itself acknowledged at last week's hearing, the amount of the settlement is relevant to the issue of damages because any money paid by Shell will reduce Goodyear's remaining claim for damages. *See, e.g.*, *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 391 (4th Cir. 1982) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971)); *see also White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 367 (N.D. Ill. 2001) ("discovery of any settlement between [settling defendant] and Plaintiffs would allow [non-settling defendant] to enter into settlement negotiations and formulate a litigation strategy without speculating as to whether its potential liability has been partially satisfied. This level of

uncertainty is important because 'the remaining defendant should not be left to grope blindly in the dark.'") (quoting *Bennett*, 112 F.R.D. at 141).

*Third*, the settlement agreement in its entirety is relevant to the merits of Goodyear's claim to the extent Shell either directly or through necessary implication made any admissions or denials of liability. It is also relevant to the issue of Goodyear's foreign claims (which at the motion to dismiss stage the Court reserved for future ruling) and how those claims were evaluated in the settlement agreement. *See, e.g.*, *Griffin*, 1997 WL 756914, at *2 ("A statement made by a codefendant to the plaintiff about the subject matter of the litigation [and executed by defendant as part of a settlement] . . . is at least arguably relevant and alternatively is likely to lead to the discovery of admissible evidence.").

**B.     The Goodyear-Shell Settlement Is Not Privileged From Discovery.**

Goodyear's submission to the Court last week concedes that settlement agreements are discoverable (*see* 10/21/09 Email from Mr. Patton to Ms. Denman), but continues to assert that FRE 408 shields part or all of the Goodyear-Shell settlement agreement from discovery. That argument is flatly wrong.

FRE 408 is a rule of admissibility, not discoverability. It states that "furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim" and "conduct or statements made in compromise negotiations regarding the claim" are not *admissible* in evidence "when offered to prove liability for, invalidity of, or amount of a claim." FRE 408's limitations on admissibility do not preclude the *discoverability* of settlement materials under Rule 26, as Judge Carr ruled in *QSI Fostoria*. *See* 2006 WL 2010791, at *1-2; *see also LaForest v. Honeywell Int'l*, No. 03-cv-6248, 2004 WL 1498916, at *6 (W.D.N.Y. 2004) (citing cases distinguishing between FRE 408 and FRCP 26); *Santrayll v. Burrell*, No. 91 Civ. 3166, 1998

Case 5:08-cv-01118-DDD   Document 119   Filed 10/26/09   Page 12 of 16

WL 24375, at *2 (S.D.N.Y. 1998) (FRE 408 "limits the introduction at trial of evidence regarding settlement negotiations," not the discoverability of the evidence); *Tribune*, 1996 WL 337277, at *1 ("Rule 408 neither governs nor precludes the discovery of settlement related materials"). Yet, even as a rule of admissibility, Rule 408 explicitly permits the *admission* of settlement information when, as here, it is relevant to a witness's bias or prejudice.

Countless other courts have recognized that FRE 408 does not bar discovery of settlement agreements. *See, e.g.*, *Meharg*, 2009 WL 3032327, at *3-4; *In re CFS-Related Secs. Fraud Litig.*, 2003 WL 24136089, at *2; *White*, 203 F.R.D. at 368; *Griffin*, 1997 WL 756914, at *2; *Bennett*, 112 F.R.D. 139-40. As yet another widely-cited district court decision explains:

> [FRE 408] is not designed to lock away settlement documents, forever shielding them from view by those not party to the agreement. While it is true that the rule seeks to encourage the settlement process, it accomplishes that purpose not by making the settlement information unavailable, but by limiting abusive use of positions taken during the process. The rule insures that offers of compromise will not have intrinsic evidentiary value. The rule recognizes that in the give and take of settlement negotiations offers and concessions are made which are inconsistent with the legal and factual positions maintained by the parties. The rule recognizes that parties will be discouraged from making settlement offers if those offers may be used as evidence at trial. The rule thus fosters non-judicial resolution of disputes because compromises made during the settlement process will not later surface to haunt the parties as substantive evidence. The policy behind Rule 408 thus does not require any special restriction on Rule 26 because the discovery rules do not affect admissibility.

*Bank of Brussels Lambert v. Chase Manhattan Bank*, No. 93 Civ. 5298, 1996 WL 71507, at *3 (S.D.N.Y. 1996).

Nor is the Goodyear-Shell settlement agreement subject to any other "settlement privilege." As Chief Judge Carr explained in *QSI Fostoria*, "the Sixth Circuit recognizes a general 'settlement privilege' that protects settlement *negotiations* from discovery," 2006 WL 2010791, at *2 (emphasis added) (citing *Goodyear Tire & Rubber Co. v. Chiles Power Supply*,

332 F.3d 976, 980 (6th Cir. 2003)); but that privilege "does not extend beyond the actual negotiations to the terms of the final agreement." *Id.* (citing *Grupo Condumex, S.A. de C.V. v. SPX Corp.*, 331 F. Supp. 2d 623, 629 (N.D. Ohio 2004)).[4]

**C.     The Protective Order Can Protect Any Remaining Concerns Of Confidentiality.**

The Court's protective order in this case is more than sufficient to preserve any interest Goodyear may have in preventing the public disclosure of the Goodyear-Shell settlement agreement. *See, e.g.*, *Cleveland Constr.*, 2004 WL 385052, at *1 ("The confidentiality provision of the [settlement] agreement does not preclude its discovery, especially when a protective order can be entered to protect against disclosure of the agreement outside this litigation."). For this reason, parties cannot shield documents from discovery by reaching confidentiality agreements with others. *See*, *e.g.*, *Adams v. Cooper Indus.*, No. 03-476-JBC, 2007 WL 805459, at *2 (E.D. Ky. 2007) ("[I]n the context of settlement agreements the mere fact that settling parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality.") (quoting *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684-85 (D. Kan. 2004)).

### III.     CONCLUSION

For the foregoing reasons, the Court should order Goodyear immediately to produce to defendants the Goodyear-Shell settlement agreement in its entirety, so that defendants can have it for purposes of preparing for Mr. Vogelzang's deposition and for further use in this case.

---

[4] That is, as Judge Carr recognized, the issue before this Court is different than the issue in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), where the Sixth Circuit recognized a "settlement privilege" that protects communications made in furtherance of settlement negotiations from discovery by third parties. At the same time, the Sixth Circuit noted that, "as with other privileges, the relationship itself is not privileged, but only the underlying communications." *Id.* at 981-82.

Dated: October 26, 2009                     Respectfully submitted,

s/s Brian K. Grube

Thomas Demitrack (0025266)
E-mail: tdemitrack@jonesday.com
Brian K. Grube (0068846)
E-mail: bkgrube@jonesday.com
David L. DeBord (0077044)
E-mail: dldebord@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Phillip A. Proger (0025774)
E-mail: paproger@jonesday.com
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: paproger@jonesday.com

Counsel for Defendants Bayer AG, Bayer MaterialScience L.L.C. and Bayer Corporation

KIRKLAND & ELLIS LLP

s/s Tefft W. Smith

Tefft W. Smith (Ill. 2655314)
Colin R. Kass (Ill. 06237415)
655 Fifteenth Street, N.W.
Washington, D.C., 20005-5793
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
Email: tsmith@kirkland.com

- and -

TZANGAS, PLAKAS, MANNOS & RAIES, LTD.

Lee E. Plakas (0008628)
Beth A. Raies (0037001)
Edmond J. Mack (0082906)
220 Market Avenue South
Eighth Floor
Canton, Ohio 44702
Telephone: (330) 455-6112
Facsimile: (330) 455-2108
Email: lplakas@lawlion.com

Counsel for Defendants The Dow Chemical Company, Dow Deutschland, Inc., Dow Deutschland GmbH & Co., OHG, and Dow Europe GmbH

CLEARY, GOTTLIEB, STEEN & HAMILTON LLP

s/s Mark Leddy
Mark Leddy (D.C. 404833)
Adam J. Miller (D.C. 485667)
Kathleen W. Bradish (D.C. 494750)
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 974-1500
Facsimile: (202) 974-1999
Email: mleddy@cgsh.com

-and-

ANSPACH MEEKS ELLENBERGER LLP

Dennis A. Lyle (0025605)
300 Madison Ave., Suite 1600
Toledo, Ohio 43604-2633
Telephone: (419) 246-5757
Facsimile: (419) 321-6979
Email: dlyle@anspachlaw.com

Counsel for Defendants Eni S.p.A., Syndial S.p.A., Polimeri Europa Americas, Inc. and Polimeri Europa S.p.A.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been filed and served electronically on the 26th day of October, 2009, upon all parties currently registered for this matter in the Court's electronic filing system.

s/s Brian K. Grube  
One of the Attorneys for Bayer AG, Bayer Corporation and Bayer MaterialScience LLC